2002 ND 190

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Edward SKORICK, Defendant and Appellant.**

No. 20020090.

Supreme Court of North Dakota.

Dec. 4, 2002.

700

Cynthia M. Feland, Assistant State's Attorney, Bismarck, N.D., for plaintiff and appellee.

Thomas K. Schoppert, Schoppert Law Firm, Minot, N.D., for defendant and appellant.

KAPSNER, Justice.

[¶ 1]  Edward Skorick appeals his jury trial conviction for gross sexual imposition. We hold there was no prosecutorial misconduct during the State's rebuttal closing argument which denied the defendant a fair trial, and although the trial court erred in permitting sequestered witnesses to remain in the courtroom after they testified for purposes of returning as rebuttal witnesses, the error was harmless.  We affirm.

I.

[¶ 2]  Skorick was charged with class A felony gross sexual imposition under N.D.C.C. § 12.1–20–03(1)(d), for engaging in sexual contact with a minor under the age of 15.  The jury found Skorick guilty, and the trial court sentenced him as a habitual offender to 20 years incarceration with the North Dakota Department of Corrections and Rehabilitation.  On appeal, Skorick argues the trial court erred when the judge sequestered the witnesses until they offered direct testimony, but permitted them to remain in the courtroom for purposes of returning as rebuttal

witnesses. Skorick also argues the State committed prosecutorial misconduct in its rebuttal closing argument by vouching for the complaining witness's date of occurrence and for suggesting the burden shifted.

## II.

[¶ 3] Skorick claims the trial court committed reversible error by allowing a rebuttal witness to testify for the State, even though he had listened to testimony of other witnesses in violation of Rule 615, N.D.R.Ev.

■ [¶ 4] Rule 615, N.D.R.Ev., provides:

> At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order on its own motion. This rule does not authorize exclusion of (i) a party who is a natural person, or (ii) an officer or employee of a party that is not a natural person designated as its representative by its attorney, or (iii) a person whose presence is shown by a party to be essential to the presentation of the party's cause.

It is mandatory to order exclusion of witnesses when requested by a party. *State v. Heart*, 334 N.W.2d 479, 482 (N.D.1983). This Court has applied Rule 615, N.D.R.Ev., to rebuttal witnesses. *State v. Hill*, 1999 ND 26, ¶ 6, 590 N.W.2d 187.

[¶ 5] Prior to trial in this case, the judge ordered "all witnesses be sequestered until they have offered direct testimony. Once they have testified I'm going to allow witnesses to remain in the courtroom for purposes of returning as rebuttal witnesses, and I believe that is appropriate under the rules." Skorick objected to the judge's order and argued Rule 615, N.D.R.Ev., does not provide for witnesses who may be recalled to remain in the

courtroom after they have testified. The judge responded, "We'll address the matter should it arise, if there is a request for rebuttal." On the second day of trial, Skorick renewed his objection about witnesses remaining in the courtroom. The State was in the middle of its case-in-chief and responded: "[a]t this point we don't even know if the defense will put on any evidence. We don't know if there will be any rebuttal. Pretty hard to anticipate if there will be rebuttal at this point." At this time, only the complaining witness for the State was present and she was ordered to leave pursuant to the sequestration order.

■ [¶ 6] The trial judge erred when he permitted witnesses to remain in the courtroom for purposes of returning as rebuttal witnesses. *See Hill*, at ¶ 6 (applying N.D.R.Ev. 615 to rebuttal witnesses). Our review of the trial court error is guided by Rule 52(a), N.D.R.Crim.P. This rule provides: "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." Trial court error which does not prejudice substantial rights of the accused may be disregarded. *State v. Micko*, 393 N.W.2d 741, 746 (N.D.1986). In deciding whether an error is harmful, we examine the entire record and evaluate the error in the context of the circumstances in which it was made to see if it had a significant impact upon the jury's verdict. *State v. Demery*, 331 N.W.2d 7, 12 (N.D.1983). In cases of nonconstitutional error, we do not have to find the error was harmless beyond a reasonable doubt. *State v. Thiel*, 411 N.W.2d 66, 70 (N.D.1987).

■ [¶ 7] In this case, the State's rebuttal witness was called to address several issues raised during the defense, including the placement of the coffee table. Skorick argues one of the critical conten-

tions of his defense was the placement of the coffee table; and if the witness had not heard the prior testimony, he might not have known the importance of the placement of the coffee table. The rebuttal witness's testimony supported the defense's witnesses that there was a coffee table in the room. Because the weight of the evidence and the credibility of witnesses are questions for the jury, *Heart*, at 481, we cannot conclude, after examining the entire record, the rebuttal witness's testimony affected Skorick's substantial rights. Therefore, the trial court's error in permitting witnesses to remain in the courtroom for purposes of returning as rebuttal witnesses was harmless and does not require reversal.

[¶ 8] During the trial, Skorick renewed his objection to witnesses remaining in the courtroom after they have testified, and argued it was a violation of N.D.R.Ev. 615 for the trial court to allow the rebuttal witness to testify after having heard prior testimony. Our review of the trial court's decision to permit the rebuttal witness to testify despite a sequestration order is governed by *Hill*. A trial court's decision during trial to permit a witness to testify even though the witness heard prior testimony in violation of a sequestration order is reviewed under an abuse of discretion standard. *Hill*, at ¶ 6. A court abuses its discretion if it acts in an arbitrary, unconscionable, or unreasonable manner. *Id.* at ¶ 14.

[¶ 9] "If the objecting party clearly shows, by offer of proof or other appropriate means, a witness's testimony would be influenced by prior testimony the witness heard in violation of a sequestration order, it would be an abuse of discretion for the court to allow the witness to testify." *Hill*, at ¶ 14. No such showing is present in this case. "The purpose of the sequestration rule 'is to prevent wit-

nesses from tailoring their testimony to that which has already been presented and to help in detecting testimony that is less than candid.'" *Id.* at ¶ 5 (citing *United States v. Hargrove*, 929 F.2d 316, 320 (7th Cir.1991)). There is no showing that the rebuttal witness's testimony was either tailored to a prior witness or made less candid by his having heard prior testimony. The testimony supported Skorick's witnesses that a coffee table was present in the living room. Skorick made his objection to this rebuttal witness having heard prior testimony in the presence of the jury. The jury was, therefore, alerted to the potential for the rebuttal testimony being affected by prior testimony and could factor that information into its determination of credibility. Thus, we are not convinced that allowing the rebuttal testimony amounted to an abuse of discretion.

### III.

[¶ 10] Skorick also argues the State committed prosecutorial misconduct in its rebuttal closing argument by vouching for the complaining witness's date of occurrence and for suggesting the burden shifted.

### A.

[¶ 11] "The control and scope of opening and closing arguments is largely a matter left to the discretion of the trial court, and a case will not be reversed on the ground that the prosecutor exceeded the scope of permissible closing argument unless a clear abuse of discretion is shown." *State v. Schimmel*, 409 N.W.2d 335, 342 (N.D.1987). Unless the error is fundamental, the defendant must demonstrate that the prosecution's comments during closing argument were improper and prejudicial. *Id.* Ordinarily, "inappropriate prosecutorial comments, standing alone, do not justify a reviewing court to

reverse a criminal conviction obtained in an otherwise fair proceeding." *Thiel,* 411 N.W.2d at 71.

[¶ 12] Skorick argues the prosecutor committed prosecutorial misconduct in her rebuttal closing argument when she vouched for the credibility of the victim and was allowed to change the date of the occurrence by stating:

> Okay. When did [K.B.] say this happened? When did it happen? Between fourth and fifth grade. At the end of fourth grade, commencing fifth grade. When about after fourth grade? June, May or June. She said 1997. The school year started in '97. It didn't end in '97. It ended in '98. That is right as she is sitting up here that that slip is made. I think when I started out in opening statement I said to you that it happened in '97. I missed that. And she said '97 the way that Mr. Schoppert did. Then it is my fault for not jumping on it and correcting it and asking some specifics.

[¶ 13] Skorick has failed to prove the prosecutor's remarks were improper and prejudicial. The date of the occurrence can be calculated through the testimony in the record, and it is consistent with the date the prosecutor stated in her rebuttal closing argument. The victim testified on direct examination:

> Q. Okay. Now I am going to stop and back you up again. Do you know when about this was?
>
> A. Right about the summer of '97 when I was entering fifth grade.
>
> Q. Okay. So you would have—you finished fourth grade and were going to start fifth grade or you had already started fifth grade?
>
> A. I was going into the fifth grade.

The victim also testified that she was in 7th grade last year. From her testimony, we can determine that fourth grade for the victim would have began in the Fall of 1997 and ended in the Spring of 1998. Thus, the victim would have begun fifth grade in the Fall of 1998, not 1997. Her testimony can be corroborated with testimony from one of the defense's witnesses. A friend of Skorick who was also the father of the victim's classmate testified on cross examination:

> Q. Did [S.S.] and [K.B.] go to school together?
>
> A. Yes.
>
> Q. Were they in the same grade?
>
> A. Yes.
>
> Q. Okay. What grade is [S.S.] in right now?
>
> A. He's in the 8th grade.
>
> Q. And so he would have started the 8th grade just this fall, so that would be August or September of 2001?
>
> A. Correct.
>
> Q. So the 8th grade school year would run from fall of 2001 to the spring of 2002, right?
>
> A. Correct.
>
> Q. Then in 7th grade it would follow—did he miss any grades or progressed right through?
>
> A. He went right through.
>
> Q. He has never been held back at all?
>
> A. No.
>
> Q. If we work this backwards this would be 2000–01. Okay. Maybe this will make it easier and then we can actually look at a time line and keep it squared with the age and grades the kids are in. 8th grade we know then he started fall of 2001?
>
> A. Yes.
>
> Q. And he hasn't missed any grades.
>
> THE COURT: Just a moment—just a moment, counsel. Please proceed.
>
> Q. Okay. Okay. So in 7th grade, that would have been 2000, we keep going

back a year. So in fourth grade that would have been '97 to '98, so fall of '97 to spring of '98?

A. Okay.

The prosecutor did not change the date of the occurrence in her rebuttal closing argument. The victim testified the act occurred in the summer after fourth grade and before fifth grade. The record indicates the date to reflect that time period is the summer of 1998. Thus, the trial court did not abuse its discretion in permitting the prosecutor's remarks concerning the date of the occurrence.

### B.

[¶ 14] Skorick also argues the prosecutor attempted to shift the burden during her rebuttal closing argument when she mentioned the lack of physical evidence. The prosecutor commented, "Yup, it would be nice if in any one of these kinds of cases I can give you physical evidence. I dare say we wouldn't be here if I could, unfortunately." The prosecutor's remarks were made in response to defense counsel's argument that the lack of physical evidence helps exonerate his client.

[¶ 15] We are concerned when a prosecutor comments personally on the evidence because he or she is acting as an unsworn witness for the prosecution who is not subject to cross-examination and who may be perceived as an expert witness. *Schimmel*, 409 N.W.2d at 343. It is possible the prosecutor's comment in this case may have suggested to the jury, based on her special knowledge and expertise, that it is okay and typical in "these kinds of cases" not to have physical evidence. During closing argument, prosecutors may properly draw conclusions and argue permissible inferences which may reasonably flow from the evidence, however they cannot create evidence by argument or by

incorporating personal beliefs. *State v. Escobedo*, 573 N.W.2d 271, 278 (Iowa App. 1997). This is true whether counsel's comments are based on knowledge of facts not possessed by the jury, personal experiences in similar cases, or any other ground other than the weight of the evidence presented at trial. *Id.*

[¶ 16] In this case, the prosecutor implied it was not unusual to not have any physical evidence. Courts have concluded the defendant was not denied a fair trial when statements concerning the lack of physical evidence were made by a prosecutor during closing argument. *See State v. MacDonald*, 2002 Ohio 4969, ¶ 42 (permitting the prosecutor to address the lack of physical evidence during closing argument since it was a key argument of the defense); *State v. Saunders*, 2000 WL 1724823, *2–3, 2000 Ohio App. Lexis 5385, *6–7 (10th Cir. Nov. 21, 2000) (allowing comments on the lack of physical evidence when the prosecutor was responding to defense counsel's questioning and criticism as to the lack of physical evidence).

[¶ 17] When reviewing to determine if the comment or remark was so offensive to prejudice the defendant, we need to consider all of the evidence presented at trial. *See City of Grand Forks v. Cameron*, 435 N.W.2d 700, 704 (N.D. 1989). Although we express concern with the prosecutor's comment, when viewed in the context of the entire proceeding, we do not believe the comment regarding the lack of physical evidence affected the jury's ability to judge the evidence fairly. The jury was instructed in the opening jury instructions that they are not to consider as evidence statements or arguments by the attorneys. The jury was also instructed to weigh the evidence and consider both direct and circumstantial evidence. We presume the jury follows the judge's instructions. *State v. Purdy*, 491 N.W.2d

402, 411 (N.D.1992). The prejudice, if any, that resulted from the prosecutor's rebuttal closing argument was minimized by the jury instructions. We have carefully reviewed the transcript of the defendant's trial and are unable to conclude the State's rebuttal closing argument denied the defendant a fair trial. Therefore, we conclude Skorick was not prejudiced by the prosecutor's remarks and find the trial court did not abuse its discretion.

### IV.

[¶ 18] We hold there was no prosecutorial misconduct during the State's rebuttal closing argument which denied the defendant a fair trial, and although the trial court erred in permitting the sequestered witnesses to remain in the courtroom after they testified for purposes of returning as rebuttal witnesses, the error was harmless. We affirm.

[¶ 19] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, WILLIAM A. NEUMANN and MARY MUEHLEN MARING, JJ., concur.