2010 ND 121

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Sonny WANNER, Defendant and Appellant.**

**No. 20090280.**

Supreme Court of North Dakota.

June 30, 2010.

James A. Hope, Assistant State's Attorney, Dickinson, N.D., for plaintiff and appellee; submitted on brief.

Kent M. Morrow, Bismarck, N.D., for defendant and appellant; submitted on brief.

MARING, Justice.

[¶ 1] Sonny Wanner appeals from a criminal judgment entered on a jury verdict finding him guilty of criminal mischief. On appeal, Wanner argues there was insufficient evidence to sustain his conviction, and that the trial court erred when it failed to exclude the testimony of a State's witness as violative of a sequestration order. We affirm.

I

[¶ 2] Wanner was charged with criminal mischief, in violation of N.D.C.C. § 12.1–21–05, a class B felony, for willfully damaging property owned by another. On June 10, 2009, a jury trial was held. Numerous witnesses testified. The testimony revealed that at approximately 2:15 a.m. on April 12, 2008, fire damaged three vehicles owned by Casey Jones, Josh Jorde, and John Olheiser. Lieutenant Rick Shirey testified that law enforcement collected gas cans at the scene. Lieutenant Shirey located the same type of gas cans used in the fires at Wal–Mart. He asked a Wal–Mart employee to examine Wal–Mart's records. The employee reviewed surveillance tapes and receipts, and identified a sale of gas cans on April 11, 2008. The employee testified that, after the fires, Wanner asked him questions about the Wal–Mart surveillance system. The State showed video clips from the Wal–Mart surveillance tapes of a person purchasing gas cans and spray paint. Jones testified that she believed the person in the video was Wanner.

[¶ 3] At the scene, law enforcement noticed a spray-painted message on the outside of a townhome: "You sold drugs to the wrong kid, Bitch. Your kids are next."

A witness testified she had not seen the writing prior to the evening of the fires. A neighbor testified that he found a can of spray paint in his yard one to two weeks after the fire and notified law enforcement.

[¶ 4] Jones testified that she and Wanner have two children together and had been in a custody dispute. Jones and her boyfriend, Jorde, lived together in a townhouse with the children. A social services employee testified that, in 2007, Wanner made a report alleging Jones was using drugs, she was living with a man who had a history of drug abuse and violence, and did not have money for food, formula, beds, and appropriate clothing for the children.

[¶ 5] Jerome Kuntz testified that Wanner told him multiple times over the course of three months that Wanner "was going to torch [Jones's] car." Wanner had asked Kuntz if he could take some gas cans from Kuntz's quonset, but Kuntz refused. The State introduced testimony through Wanner's mother's deposition. Wanner had told his mother maybe weekly that he was going "to do something to [Jones's] car." Wanner also told his mother that he had purchased eighteen cans of spray paint and had painted his vehicle. He told his mother he intended to travel to Towner the evening of the fire, but a friend testified Wanner was at his apartment until 2:00 or 2:30 a.m.

[¶ 6] At the start of the trial, Wanner moved to sequester witnesses, and the trial court granted Wanner's motion. Lieutenant Shirey sat at the State's table during the first day of trial and prior to his own testimony. Wanner objected when Lieutenant Shirey was called to testify. After Lieutenant Shirey testified, Wanner argued the sequestration order should have prevented Lieutenant Shirey from testifying because he was present during other witnesses' testimony and the State failed

to designate Lieutenant Shirey as its representative. Wanner requested a mistrial or a curative instruction to the jury. The State argued that under N.D.R.Ev. 615(ii), the trial court cannot exclude an officer because the rule allows the State to have a representative present. The trial court denied the motion for a mistrial and noted that the information Lieutenant Shirey heard was redundant and cumulative. The court stated, "I don't think that he's heard anything that anybody's surprised about, so I don't think there's any harm." The trial court also refused to give Wanner his proposed curative jury instruction on the grounds the State had not violated the sequestration order. Lieutenant Shirey did not remain in the courtroom after he testified.

[¶ 7] The jury convicted Wanner of criminal mischief. Wanner appeals, arguing there was insufficient evidence to sustain a conviction, and the trial court erred when it failed to exclude the testimony of Lieutenant Shirey as violative of the sequestration order.

## II

[¶ 8] Wanner argues the evidence was insufficient to support the jury verdict convicting him of criminal mischief. According to Wanner, the evidence presented was circumstantial and too tenuous to connect him to the crime, and it was mere speculation that he was in the general vicinity of the crime. *See State v. Holy Bull*, 238 N.W.2d 52, 55 (N.D.1975).

[¶ 9] This Court has provided the standard for review when a defendant challenges the sufficiency of the evidence:

Appellate review of the sufficiency of the evidence for a jury verdict is very limited. When the sufficiency of evidence to support a criminal conviction is challenged, this Court merely reviews the record to determine if there is competent evidence allowing the jury to draw an inference reasonably tending to prove guilt and fairly warranting a conviction. The defendant bears the burden of showing the evidence reveals no reasonable inference of guilt when viewed in the light most favorable to the verdict. When considering insufficiency of the evidence, we will not reweigh conflicting evidence or judge the credibility of witnesses. . . . A jury may find a defendant guilty even though evidence exists which, if believed, could lead to a verdict of not guilty.

*State v. Dahl*, 2009 ND 204, ¶ 6, 776 N.W.2d 37 (quoting *State v. Demarais*, 2009 ND 143, ¶ 7, 770 N.W.2d 246). Section 12.1–21–05, N.D.C.C., governing criminal mischief, provides:

1. A person is guilty of an offense if that person:

    a. Willfully tampers with tangible property of another so as to endanger person or property; or

    b. Willfully damages tangible property of another.

2. The offense is:

    a. A class B felony if the actor intentionally causes pecuniary loss in excess of ten thousand dollars.

[¶ 10] At trial, testimony revealed that Wanner and Jones were in a custody dispute; Wanner told one person he was going to torch Jones's car; Wanner told his mother he was going to do something to Jones's car; Jones identified Wanner in the Wal–Mart surveillance video purchasing gas cans and spray paint; the jury had the opportunity to review the videotape; and Wanner had recently spray painted his car. Further, Wanner's friend testified Wanner was with him in Dickinson until about 2:00 or 2:30 a.m. the morning of the fire. The fire was reported at approximately 2:15 a.m. Moreover, a message was

spray-painted on the townhome wall that could reasonably have been interpreted by a jury as directed at Jones. We hold competent evidence exists to allow the jury to draw an inference reasonably tending to prove guilt and fairly warranting a criminal mischief conviction.

## III

[¶ 11] Wanner argues the trial court erred when it allowed Lieutenant Shirey to testify after violating the sequestration order. Wanner contends the State violated the court's sequestration order because it failed to designate Lieutenant Shirey as a representative prior to trial. He also argues the trial court erred by refusing to provide a curative jury instruction.

## A

[¶ 12] Rule 615, N.D.R.Ev., provides:

> At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order on its own motion. This rule does not authorize exclusion of (i) a party who is a natural person, or (ii) an officer or employee of a party that is not a natural person designated as its representative by its attorney, or (iii) a person whose presence is shown by a party to be essential to the presentation of the party's cause.

This rule is derived from Rule 615 of the Federal Rules of Evidence. *State v. Hill*, 1999 ND 26, ¶ 4, 590 N.W.2d 187. Because of the similarities between our rule and the federal rule, we may also consider federal precedent in our interpretation. *State v. Buchholz*, 2004 ND 77, ¶ 24, 678 N.W.2d 144. Under N.D.R.Ev. 615, " '[i]t is mandatory to order exclusion of witnesses when requested by a party.' " *State v. Muhle*, 2007 ND 132, ¶ 34, 737 N.W.2d 647 (quoting *State v. Skorick*, 2002 ND 190, ¶ 4, 653 N.W.2d 698). The rule departed from prior law, which provided that the exclusion of a witness was a matter within the trial court's discretion. N.D.R.Ev. 615, Explanatory Note; *see* Jack B. Weinstein and Margaret A. Berger, *Weinstein's Federal Evidence* § 615.03[1] (2d ed.2010).

[¶ 13] The purpose of sequestration is to prevent one witness's testimony from influencing another. *Nesvig v. Nesvig*, 2006 ND 66, ¶ 20, 712 N.W.2d 299. Sequestration also permits discovery of false testimony and credibility issues. *Buchholz*, 2004 ND 77, ¶ 24, 678 N.W.2d 144. This Court reviews a trial court's decision to permit a witness to testify even though the witness heard prior testimony in violation of a sequestration order under an abuse of discretion standard. *Muhle*, 2007 ND 132, ¶ 35, 737 N.W.2d 647; *see also United States v. Vallie*, 284 F.3d 917, 921 (8th Cir.2002). " 'If the objecting party clearly shows by offer of proof or other appropriate means, a witness's testimony would be influenced by prior testimony the witness heard in violation of a sequestration order, it would be an abuse of discretion for the court to allow the witness to testify.' " *Muhle*, at ¶ 35 (quoting *Hill*, 1999 ND 26, ¶ 14, 590 N.W.2d 187).

[¶ 14] Our review of this record has been hampered by the failure to record pertinent sidebar discussions. The trial transcript provides that the State called Lieutenant Shirey to testify, and Wanner requested a sidebar discussion with the court. The court reporter did not record the subsequent discussion, and the record only provides a note that there was a sidebar discussion. The trial court, without comment on the record, allowed Lieutenant Shirey to testify. After he testified, the trial court instructed the parties to put the discussion that occurred during

the sidebar on the record. The sidebar discussion should have been recorded when it took place. Under N.D. Sup.Ct. Admin. R. 39, § 2, "[t]he record of testimony and proceedings of the district court must be preserved using audio-recording devices, video-recording devices, or stenographic shorthand notes."

■ [¶ 15] Because we do not have the sidebar record, we cannot determine the basis for the trial court's decision to allow Lieutenant Shirey to proceed to testify. However, the rule provides that three categories of witnesses are exempted from exclusion, including, "an officer or employee of a party that is not a natural person designated as its representative by its attorney." N.D.R.Ev. 615(ii). This exemption is most commonly relied on by the government in a criminal prosecution as the reason for having its case agent remain in the courtroom. *See Weinstein's Federal Evidence* § 615.04[2][a] (2d ed.2010). The Senate Judiciary Committee report on Fed.R.Ev. 615 provides the following explanation for interpreting the exemption to allow the government-designated representative to remain at counsel table throughout the trial:

> Many district courts permit government counsel to have an investigative agent at counsel table throughout the trial although the agent is or may be a witness. The practice is permitted as an exception to the rule of exclusion and compares with the situation defense counsel finds himself in—he always has the client with him to consult during the trial. The investigative agent's presence may be extremely important to government counsel, especially when the case is complex or involves some specialized subject matter. The agent, too, having lived with the case for a long time, may be able to assist in meeting trial surprises where the best-prepared counsel would otherwise have difficulty. Yet, it would not seem the Government could often meet the burden under rule 615 of showing that the agent's presence is essential. Furthermore, it could be dangerous to use the agent as a witness as early in the case as possible, so that he might then help counsel as a nonwitness, since the agent's testimony could be needed in rebuttal. Using another, nonwitness agent from the same investigative agency would not generally meet government counsel's needs. This problem is solved if it is clear that investigative agents are within the group specified under the second exception made in the rule, for "an officer or employee of a party which is not a natural person designated as its representative by its attorney." It is our understanding that this was the intention of the House committee. It is certainly this committee's construction of the rule.

*Weinstein's Federal Evidence* § 615App.01[3] (quoting *Report on the Federal Rules of Evidence*, Senate Comm. on the Judiciary, 93d Cong., 2d Sess. 26 (1974)). Federal courts have concluded that a case agent falls within this exception. *See United States v. Charles*, 456 F.3d 249, 257 (1st Cir.2006); *United States v. Sykes*, 977 F.2d 1242, 1245 (8th Cir. 1992); *United States v. Rivera*, 971 F.2d 876, 889–90 (2d Cir.1992); *United States v. Pulley*, 922 F.2d 1283, 1285 (6th Cir.1991); *United States v. Gonzalez*, 918 F.2d 1129, 1138 (3d Cir.1990); *United States v. Adamo*, 882 F.2d 1218, 1235 (7th Cir.1989); *United States v. Parodi*, 703 F.2d 768, 773 (4th Cir.1983); *United States v. Butera*, 677 F.2d 1376, 1381 (11th Cir.1982); *United States v. Cueto*, 611 F.2d 1056, 1061 (5th Cir.1980). Although the rule does not mandate a formal designation of a representative at a particular time, we conclude the better practice is to designate a representative at the time a party moves for

sequestration. If the State had designated Lieutenant Shirey as its representative at the time Wanner requested the sequestration order, federal case law and the Senate Judiciary Committee's report indicate that he would qualify as a representative under N.D.R.Ev. 615(ii).

[¶ 16] After Lieutenant Shirey testified, Wanner argued on the record to the trial court that the State had violated the sequestration order and requested a mistrial. At that point, the State took the position that Lieutenant Shirey was the State's designated representative and fell within the exemption. The trial court denied Wanner's motion and applied a prejudice standard, stating, "[A]t this point, whatever Mis—Mr. Shirey has heard here, it's been redundant, cumulative, and it's—to me, I mean, it's building up to something. I don't think that he's heard anything that anybody's surprised about, so I don't think there's any harm.... I'm not going to exclude him at this point." Lieutenant Shirey abided by the sequestration order after he testified.

■ [¶ 17] The federal circuit courts of appeal have applied various standards of review when deciding whether a trial court's ruling regarding a violation of a sequestration order was error. *See* 29 Charles Allan Wright and Victor James Gold, *Federal Practice and Procedure: Evidence* § 6245 (Supp.2010); *see also Weinstein's Federal Evidence* § 615.07[3][b]. Our Court reviews the trial court's decision to permit a witness to testify, even though the witness remained in the courtroom and heard prior testimony, under an abuse of discretion standard. *Muhle*, 2007 ND 132, ¶ 35, 737 N.W.2d 647; *see Sykes*, 977 F.2d at 1245 ("The decision whether to allow the government's agent to testify even though the agent sits at the counsel table throughout the trial is left to the trial court's discretion."). In

order for Wanner to show an abuse of discretion by the trial court, he must show prejudice. *See Nesvig*, 2006 ND 66, ¶¶ 21–22, 712 N.W.2d 299; *cf. Skorick*, 2002 ND 190, ¶¶ 6–9, 653 N.W.2d 698; *Sykes*, 977 F.2d at 1245; *Cueto*, 611 F.2d at 1061. " 'If the objecting party clearly shows, by offer of proof or other appropriate means, a witness's testimony would be influenced by prior testimony the witness heard in violation of a sequestration order, it would be an abuse of discretion for the court to allow the witness to testify.' " *Skorick*, 2002 ND 190, ¶ 9, 653 N.W.2d 698 (quoting *Hill*, 1999 ND 26, ¶ 14, 590 N.W.2d 187). There is no showing in this case that Lieutenant Shirey's testimony was influenced by the prior testimony he heard before he testified.

[¶ 18] Wanner alleges "much other evidence was testified to by other witnesses, including the purchase of gasoline and black spray paint, as well as the graffiti on the walls of an adjoining townhouse." Wanner did not cite to any pages in the record, nor did he point to any witness testimony.

[¶ 19] Nine witnesses testified before Lieutenant Shirey. Travis Leintz testified he was an officer dispatched to the fire. He observed the vehicles, gas cans, and writing on the townhome walls. He took pictures at the scene, which were introduced into evidence. The next witness was Casey Jones. She testified that she and Wanner have two children together and were engaged in custody proceedings. She testified about the people who lived in the other townhomes, her course of action during the fire, damage to her vehicle, pictures she took, Wanner's vehicle, and a visit from social services and law enforcement. Thomas Irwin testified that he was a volunteer with the fire department. He testified he was dispatched to the scene, saw two vehicles on fire, and the third

vehicle was not on fire when he arrived. He saw a gas can in the area of the fire. John Olheiser testified that his vehicle was burned during the fire. He testified about the townhome residents, and that he did not see anyone other than the fire department, police officers, and people across the street watching the fire. Kimberly Schwindt testified that she is a dispatcher. She received three calls about the fire at approximately 2:14 a.m. Josh Jorde testified that he was living with Casey Jones during the fire. He testified that a person knocked on the door of their townhome and, when he opened the door, he saw that his vehicle, Jones's vehicle, and a neighbor's vehicle appeared to be on fire. He testified he saw gas cans on the sidewalk. He also noticed writing on the townhome wall. Kerry Ehresman testified that he lives across from the townhomes, and he called 911 after he saw the fire. He also testified that he saw a gas can on the hood of one of the vehicles, and a gas can on the ground. Amy Dohrmann testified that she lived in the townhome complex. She testified she observed the vehicles burning and the writing on the wall of the townhome. Carrie Kovash testified she is a social worker. She investigated a report filed by Wanner regarding Casey Jones. She testified the report alleged Jones was seen in public using drugs, was residing with a man who had a history of violence and drug abuse, and was leaving the children in his care. She also testified the report alleged there was no food or money and there were concerns about appropriate clothing and beds.

[¶ 20] Lieutenant Shirey subsequently testified that he was the lead investigator. He was called to the scene of the fires, and he testified he noticed the graffiti on the side of the townhouse, two gas containers, a tire with a can in it, a cigarette, and the vehicles. He spoke with some of the residents. He testified the liquid in the gas can was red, and he sent it to the state laboratory. The State introduced the gas cans as evidence through Lieutenant Shirey. He testified that he looked for the gas cans at retail stores in Dickinson and located them at Wal–Mart. Lieutenant Shirey subsequently abided by the sequestration order.

[¶ 21] Wanner has failed to show that he was prejudiced by the court's decision to allow Lieutenant Shirey to testify. *See Sykes*, 977 F.2d at 1245. Wanner is correct that witnesses testified to the graffiti on the wall of the adjoining townhome while Lieutenant Shirey was in the courtroom. However, Lieutenant Shirey saw the writing on the townhome when he arrived at the scene. It appears also from our review that the testimony regarding the purchase of gas cans and black spray paint occurred after Lieutenant Shirey testified and left the courtroom. Wanner has not alleged that the other witnesses' testimony influenced Shirey's testimony, or that the testimony prevented Wanner from detecting falsities or credibility issues. Wanner has failed to show that Lieutenant Shirey's testimony was influenced by prior testimony he heard, or that Wanner was prejudiced by Lieutenant Shirey's testimony. After examining the entire record, we conclude that allowing Lieutenant Shirey to testify after he had remained in the courtroom was not an abuse of discretion.

**B**

[¶ 22] Wanner argues the trial court erred by refusing to provide a curative jury instruction regarding Lieutenant Shirey's alleged sequestration order violation. In his brief, Wanner provides:

> Wanner's trial counsel requested a cautionary jury instruction regarding the failure to honor the sequestration order.... The trial court refused to give any instruction.... In *State v. Muhle*, 2007 ND 132, 737 N.W.2d 647, 656, [sic] the Supreme Court found the trial

court's refusal to strike testimony harmless because the court provided the jury with a cautionary instruction. The failure of the trial court to give such a cautionary instruction was not harmless and warrants a new trial.

[¶ 23] Because we conclude Wanner has not shown he was prejudiced and the trial court did not abuse its discretion in allowing Lieutenant Shirey to testify, we do not reach this issue. *See, e.g., State v. Zajac,* 2009 ND 119, ¶ 19, 767 N.W.2d 825; *Haugenoe v. Workforce Safety and Ins.,* 2008 ND 78, ¶ 26, 748 N.W.2d 378; *Hsu v. Marian Manor Apartments, Inc.,* 2007 ND 205, ¶ 17, 743 N.W.2d 672; *State v. Westmiller,* 2007 ND 52, ¶ 15, 730 N.W.2d 134.

## IV

[¶ 24] We affirm the criminal judgment.

[¶ 25] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, DALE V. SANDSTROM and CAROL RONNING KAPSNER, JJ., concur.