2009 ND 143

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Judy Ann DEMARAIS, Defendant and Appellant.**

**Nos. 20080181, 20080182.**

Supreme Court of North Dakota.

July 21, 2009.

Carmell Faye Mattison, Assistant State's Attorney, and Lynn Slaathaug–Moen, third-year law student, Grand Forks, ND, for plaintiff and appellee; submitted on brief.

Jeff A. Bredahl, Fargo, ND, for defendant and appellant; submitted on brief.

CROTHERS, Justice.

[¶ 1] Judy Demarais appeals the district court's judgments entered after a jury found her guilty of possession of drug paraphernalia, possession of marijuana and failure to appear. We affirm.

I

[¶ 2] Demarais' residence was subject to unannounced probation searches because her live-in boyfriend, Marty Erickson, was on supervised probation. On August 13, 2007, four officers conducted a probation search at Demarais and Erickson's residence. Erickson's probation officer, Wade Price, testified they found Erickson in the living room and Demarais sitting on the floor in the master bedroom unpacking boxes. Steve Gilpin, a special agent with the North Dakota Bureau of Criminal Investigation and involved in the search, testified he asked Demarais to leave the master bedroom and go to and stay in the living room while the search was conducted. Agent Gilpin stated Demarais informed him the house was hers and she and Erickson shared the master bedroom.

[¶ 3] During the search, the officers found a black and white purse in a dresser drawer in the master bedroom. Inside the black and white purse, officers found (1) a glass pipe containing methamphetamine residue, (2) numerous Q-tips, one with methamphetamine residue on it, (3) a black digital scale, (4) another black scale, (5) a black plastic case, (6) two ziploc baggies, one containing methamphetamine residue and (7) a cloth case that contained the glass pipe. Inside the same dresser drawer, the officers found a black case containing numerous Q-tips. On the floor of the master bedroom, officers found and seized a blue nylon case containing 1.03 grams of marijuana. Also found on the floor of the master bedroom were two packs of detox tea and four packs of detox seven. Officer Price testified detox seven is a "ready clean" substance, meaning it speeds up the process of ridding an individual's body of drugs. At the time of the search, neither Demarais nor Erickson claimed ownership of these items.

[¶ 4] After the search, both Erickson and Demarais were arrested and charged with possession of drug paraphernalia and possession of marijuana. Erickson was subject to urinalysis and tested positive for methamphetamine. Subsequently, Erickson pled guilty to possession of marijuana and possession of drug paraphernalia.

[¶ 5] At Demarais' initial appearance on August 14, 2007, Demarais pled not guilty and was released on her promise to appear at future court dates. A preliminary hearing was set for September 17, 2007. Demarais appeared at the preliminary hearing and asked for a continuance. The continuance was granted, and the preliminary hearing was rescheduled for October 5, 2007. Demarais failed to appear at the October 5, 2007 hearing, and a warrant for Demarais' arrest was issued at 5:00 p.m. on October 5, 2007. The district court did not hear from Demarais until she turned herself in on October 16, 2007.

[¶ 6] On May 6–9, 2008, a jury trial was held on all three charges. At trial, each of

the officers who participated in the probation search testified about the items seized during the search. Erickson testified, claiming that the marijuana and drug paraphernalia belonged to him and that Demarais did not know the items existed. Demarais also testified, denying she knew anything about the drug paraphernalia or the marijuana. Demarais stated she did not attend her preliminary hearing on October 5, 2007 because she did not wake up until 6:00 p.m. which she attributed to her diabetic condition. The jury found Demarais guilty on all three charges.

## II

■■■ [¶ 7] Demarais argues insufficient evidence exists to support the jury's guilty verdicts on the possession of drug paraphernalia charge and on the failure to appear charge. "Appellate review of the sufficiency of the evidence for a jury verdict is very limited." *State v. Alvarado*, 2008 ND 203, ¶ 20, 757 N.W.2d 570 (quoting *State v. Freed*, 1999 ND 185, ¶ 4, 599 N.W.2d 858). "When the sufficiency of evidence to support a criminal conviction is challenged, this Court merely reviews the record to determine if there is competent evidence allowing the jury to draw an inference reasonably tending to prove guilt and fairly warranting a conviction." *State v. Coppage*, 2008 ND 134, ¶ 24, 751 N.W.2d 254 (quoting *State v. Schmeets*, 2007 ND 197, ¶ 8, 742 N.W.2d 513). "The defendant bears the burden of showing the evidence reveals no reasonable inference of guilt when viewed in the light most favorable to the verdict." *Coppage*, at ¶ 24 (quoting *Schmeets*, at ¶ 8). When considering insufficiency of the evidence, we will not "reweigh conflicting evidence or judge the credibility of witnesses." *State v. Hidanovic*, 2008 ND 66, ¶ 44, 747 N.W.2d 463. We have held, "A jury may find a defendant guilty even though evidence exists which, if believed, could lead to a verdict of not guilty." *State v. Wilson*, 2004 ND 51, ¶ 9, 676 N.W.2d 98 (quoting *State v. Hatch*, 346 N.W.2d 268, 277 (N.D.1984)).

### A

■■■ [¶ 8] Demarais argues insufficient evidence exists to uphold the jury's guilty verdict on the possession of drug paraphernalia charge because the State failed to prove she possessed the drug paraphernalia with the intent to use it. A person violates N.D.C.C. § 19–03.4–03 if the individual possesses drug paraphernalia with the intent to use it for the purpose of ingesting, preparing or storing a controlled substance. We have stated that "[p]ossession may be actual or constructive, exclusive or joint and may be shown entirely by circumstantial evidence." *State v. Morris*, 331 N.W.2d 48, 53 (N.D. 1983) (citation omitted). Constructive possession is proven when the evidence "establishes that the accused had the power and capability to exercise dominion and control over the [controlled substance]." *Id.* "Some of the additional circumstances which may support an inference of constructive possession are an accused's presence in the place where a controlled substance is found, his proximity to the place where it is found, and the fact that the controlled substance is found in plain view." *Id.* at 54 (internal citations omitted). Demarais admits she possessed the drug paraphernalia, but argues she did not possess the drug paraphernalia with the intent to use it for the purpose of ingesting, preparing or storing a controlled substance.

[¶ 9] We have recognized that in nearly all possession of drug paraphernalia cases, the State will "be forced to prove intent [to use the paraphernalia for the purpose of ingesting, preparing or storing a controlled substance] by circumstantial evidence." *State v. Raywalt*, 436 N.W.2d 234, 237

(N.D.1989). We have also held that "[a] verdict based on circumstantial evidence carries the same presumption of correctness as other verdicts." *State v. Bertram*, 2006 ND 10, ¶ 5, 708 N.W.2d 913 (quoting *State v. Noorlun*, 2005 ND 189, ¶ 20, 705 N.W.2d 819).

[¶ 10] In this case, the circumstantial evidence supporting the jury's verdict is particularly strong. The evidence reveals the drug paraphernalia was located in a woman's purse inside Demarais' house in the bedroom she shared with her boyfriend. The record further demonstrates the purse containing the paraphernalia was inside a dresser drawer that contained women's undergarments. The officers testified when they began the search, Demarais was in the bedroom and within arms reach of the drug paraphernalia. The officers found a glass pipe when they opened the purse. Agent Graham, participated in the probation search and testified the glass pipe had been used because it tested positive for methamphetamine. Agent Gilpin testified after the glass pipe was discovered, Demarais said "that would be the only thing that agents would find."

[¶ 11] The evidence also reveals Q-tips were found inside of the black and white purse and some of the Q-tips tested positive for methamphetamine. Agent Gilpin said Q-tips are used to clean pipes like the glass pipe found at Demarais' home. The purse also contained torn ziploc baggies, one of which tested positive for methamphetamine. Agent Gilpin stated baggies are often torn because the individual wants to get all of the substance out of the bag. Finally, two scales were found inside of the purse. Agent Gilpin testified scales are often used by drug users to ensure the amount of drugs they requested is in the bag or to repackage a product to be sold. This circumstantial evidence demonstrates Demarais' intent to use the drug parapher-

nalia, and therefore, we conclude sufficient evidence exists to sustain the jury's verdict on the possession of drug paraphernalia charge.

B

[¶ 12] Demarais argues insufficient evidence exists to sustain the jury's guilty verdict on the failure to appear charge because the State failed to prove she willfully failed to appear at her preliminary hearing on October 5, 2007. Section 12.1–08–05(1), N.D.C.C., states that "[a] person is guilty of an offense if, after having been released upon condition or undertaking that he will subsequently appear before a court or judicial officer as required, he willfully fails to appear as required." Demarais claims she did not willfully fail to appear because she was in a "diabetic state," which caused her to sleep over eighteen hours, missing her preliminary hearing on October 5, 2007. The evidence reveals a clerk of court for the criminal division testified Demarais appeared on August 14, 2007 for a bond hearing. The clerk said at the August 14, 2007 hearing, Demarais was released on her promise to appear at future court dates. The clerk stated that at the bond hearing, a preliminary hearing was scheduled for September 17, 2007. The clerk said Demarais appeared at the September 17, 2007 hearing and requested a continuance, which was granted, and the preliminary hearing was rescheduled for October 5, 2007.

[¶ 13] The clerk testified Demarais' attorney appeared at the October 5, 2007 preliminary hearing, but Demarais did not. As a result of Demarais' failure to appear, the clerk said that a bench warrant was issued for Demarais' arrest, but that the magistrate put the bench warrant on hold until 5:00 p.m. that day in case Demarais contacted the court to reschedule the pre-

liminary hearing. The clerk testified the court did not receive any phone calls from Demarais or from any of her family members that day or any of the subsequent days to explain why Demarais had missed her preliminary hearing. The clerk stated the court did not hear from Demarais until October 16, 2007 when she turned herself in, eleven days after missing her preliminary hearing. The State also offered the testimony of Officer Price who stated it is common for methamphetamine users to stay up for several days and then to "crash and sleep for a couple of days."

[¶ 14] Demarais testified and denied willfully failing to appear. Demarais said she failed to appear because her blood sugar was so high that it caused her to sleep for eighteen hours. After hearing all the evidence, the jury returned a guilty verdict. The jury's guilty verdict demonstrates the jury did not find Demarais' testimony credible. We will not "reweigh conflicting evidence or judge the credibility of witnesses" when determining whether sufficient evidence exists to uphold a conviction. *Hidanovic*, 2008 ND 66, ¶ 44, 747 N.W.2d 463. We affirm the district court judgment, concluding sufficient evidence exists to sustain the jury's guilty verdict on the failure to appear charge.

## C

[¶ 15] Demarais argues all three convictions should be reversed because her constitutional rights were violated when the State elicited testimony regarding her refusal to take a voluntary drug test. Demarais claims her constitutional rights were violated when the State questioned Agent Gilpin about Demarais' refusal to take a voluntary drug test. Demarais claims this testimony should have been suppressed because it made her look like a drug user. Making this argument, Demarais fails to explain how this evidence ad-

versely affected her failure to appear charge or how the evidence could justify dismissal of the possession of marijuana charge that she did not appeal. We therefore confine our analysis to the possession of drug paraphernalia charge.

[¶ 16] During the State's direct examination of Agent Gilpin, he testified that after the officers found the glass pipe in Demarais' home, he asked Demarais if she would take a drug test. Agent Gilpin testified Demarais refused to take the test. Agent Gilpin testified he explained to Demarais that it was her right to refuse to take the drug test, but that he wanted her to take the test to show she was not using methamphetamine. At trial, Demarais did not object to the admission of this testimony. Rather, when Agent Gilpin was cross-examined, Demarais asked him at least seven questions about her refusal to take the drug test. When Demarais testified, she revived the issue by explaining to the jury why she refused to take the drug test.

[¶ 17] Since Demarais failed to object to Agent Gilpin's testimony, we will reverse Demarais' convictions only if the admission of this testimony constitutes obvious error affecting the defendant's substantial rights. "To establish obvious error, the defendant must show: (1) error; (2) that is plain; and (3) affects substantial rights." *State v. Kruckenberg*, 2008 ND 212, ¶ 15, 758 N.W.2d 427. "If the error affects the accused constitutional rights, the prosecution must prove the error was harmless beyond a reasonable doubt." *Id.* "Any error, defect, irregularity or variance that does not affect substantial rights [is harmless error and] must be disregarded." N.D.R.Crim.P. 52(a). "When determining whether the error was harmless beyond a reasonable doubt, we consider the probable effect of the error in light of all the evidence." *Kruckenberg*, at ¶ 15.

[¶ 18] Before considering whether the admission of this testimony constitutes obvious error, "[w]e have repeatedly cautioned [that] a party making a constitutional claim must provide persuasive authority and reasoning, and without supportive reasoning or citations to relevant authorities an argument is without merit." *Olson v. Workforce Safety & Ins.*, 2008 ND 59, ¶ 26, 747 N.W.2d 71. We have stated that "[a] party must do more than submit bare assertions to adequately raise a constitutional issue." *Id.* Demarais has only submitted bare, conclusory assertions to support her constitutional claim.

[¶ 19] Although Demarais has not adequately briefed her constitutional claim, we note that even if we assume the district court erred in admitting Agent Gilpin's testimony regarding Demarais' refusal to take a voluntary drug test, such an error in this case would have been harmless beyond a reasonable doubt. The admission of Agent Gilpin's testimony regarding Demarais' refusal to take the voluntary drug test was harmless beyond a reasonable doubt because of the substantial evidence supporting the jury's guilty verdict. The evidence supporting the jury's verdict includes the drug paraphernalia was located in a woman's purse in Demarais' bedroom, within arms reach of where Demarais was sitting when the officers arrived. The drug paraphernalia seized included a glass pipe, Q-tips and torn ziploc baggies. The glass pipe, some of the Q-tips and one of the baggies tested positive for methamphetamine. Two scales were also inside of the woman's purse, and Agent Gilpin's testimony revealed scales are often used by drug users to ensure the amount of drugs they requested is in the bag or to repackage a product to be sold. Substantial evidence supports the jury's verdict, and therefore, if the district court erred in admitting Agent Gilpin's testimony regarding Demarais' refusal to take the voluntary

drug test, that error was harmless beyond a reasonable doubt.

III

[¶ 20] We affirm the district court's judgments.

[¶ 21] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.