Filed 2/22/18 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2018 ND 60

State of North Dakota, Plaintiff and Appellee

v.

John Daniel Isom, Defendant and Appellant

No. 20170261

Appeal from the District Court of McKenzie County, Northwest Judicial District, the Honorable Daniel Saleh El-Dweek, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by Crothers, Justice.

Todd A. Schwarz, McKenzie County State’s Attorney Office, Watford City, ND, for plaintiff and appellee.

Kiara Costa Kraus-Parr, Grand Forks, ND, for defendant and appellant.

State v. Isom

No. 20170261

Crothers, Justice.

[¶1] John Daniel Isom appeals from a criminal judgment entered after a jury found him guilty of aggravated assault—domestic violence.  Isom argues the district court imposed an illegal sentence, abused its discretion in substituting a juror after empanelment, and erred in denying his motion for judgment of acquittal.  We affirm in part and reverse in part.

I

[¶2] Isom lived with his girlfriend in Arnegard, McKenzie County.  On November 10, 2016 Isom and his girlfriend fought at their home.  Isom was intoxicated.  The dispute turned physical.  Isom choked his girlfriend, blocking her airway.  She attempted to fight back.  Isom called 911, and handed the phone to her to speak to the operator.

[¶3] Officer Maxwell Ingram responded to the residence.  Isom told Officer Ingram “I did everything” and “I was at fault.”  While at the scene Officer Ingram took pictures of the victim’s neck.  The State charged Isom with aggravated assault—domestic violence under N.D.C.C. § 12.1-17-02, a class C felony.

[¶4] At trial the district court empaneled a twelve-member jury.  Immediately after release of the remaining jury pool, the State alerted the district court to an empaneled juror’s misstatement during jury selection.  One selected juror was in a relationship with a police officer, which she had not indicated on her juror information form.  The court allowed peremptory strikes on two potential jurors, and the parties agreed on a replacement.  After the substitution the clerk seated the jury and administered an oath.

[¶5] The victim and Officer Ingram testified for the prosecution.  Officer Ingram identified pictures of the victim’s neck taken at the scene and testified in his experience the marks on the victim’s neck appeared to be signs of strangulation.  Isom moved for a judgment of acquittal based on insufficient evidence at the close of the State’s case.  The district court denied the motion.  Isom testified in his own defense.  The jury returned a verdict of guilty.

[¶6] At the sentencing hearing the district court heard a victim impact statement and a statement from Isom.  The district court considered sentencing factors then issued its sentence:

“I am going to sentence you to five years with the North Dakota Department of Corrections. I’m going to order that you serve two-and-

one-half years with the Department of Corrections and I’m going to stay two-and-one-half years for a period of five years of supervised probation.”

The criminal judgment and sentence were filed on July 5, 2017. 

[¶7] The Department of Corrections notified the district court that its imposition of five years supervised probation was illegal under N.D.C.C. § 12.1-32-06.1(2), which in July 2017 set a maximum of three years supervised probation for Isom’s conviction.  The district court declined to change the sentence.  Isom timely appealed.

II

[¶8] Isom argues the district court imposed an illegal sentence of five years supervised probation when N.D.C.C. § 12.1-32-06.1(2) provided a maximum of three years for aggravated assault—domestic violence.  We agree.

[¶9] 
“‘The interpretation of a statute is fully reviewable on appeal.’”  
State v. Norman
, 2003 ND 66, ¶ 14, 660 N.W.2d 549 (quoting 
Overboe v. Farm Credit Servs.
, 2001 ND 58, ¶ 9, 623 N.W.2d 372). At the time of sentencing, the probation statute provided:

“[T]he length of supervised probation imposed in conjunction with a sentence of probation or a suspended execution or deferred imposition of sentence may not extend for more than five years for a felony offense subject to section 12.1-32-09.1, a felony offense subject to section 12.1-32-02.1, which involves the use of a firearm or dangerous weapon, a second or subsequent violation of section 12.1-17-07.1, a second or subsequent violation of any domestic violence protection order, a violation of chapter 12.1-41, or a violation of section 14-09-22; 
three years for any other felony offense
; two years for a class A misdemeanor; and three hundred sixty days for a class B misdemeanor offense . . . .”

N.D.C.C. § 12.1-32-06.1(2) (emphasis added). 

[¶10] Isom was convicted of aggravated assault—domestic violence on July 5, 2017. Under N.D.C.C. § 12.1-17-02(1), aggravated assault—domestic violence was a class C felony.  At that time, class C felony aggravated assault—domestic violence fell within the “any other felony offense” category in N.D.C.C. § 12.1-32-06.1(2) and limited Isom’s supervised probation to three years for his crime.
(footnote: 1)  Therefore Isom’s sentence of five years supervised probation was illegal.

III

[¶11] Isom argues the district court abused its discretion and committed reversible error under N.D.R.Crim.P. 24 by replacing a juror after the initial jury had been sworn in and empaneled, in other words substituting a juror after jeopardy attached.  We disagree.

[¶12] “We review the trial court’s jury selection procedure using an abuse of discretion standard of review.”  
State v. Barth
, 2001 ND 201, ¶ 8, 637 N.W.2d 369. Rule 24(b)(1), N.D.R.Crim.P., provides for when prospective jurors may be challenged for cause:

“(A) By the Court. If the court, after examination of any prospective juror, finds grounds for challenge for cause, the court must excuse that prospective juror.

(B) By a Party. If the court does not excuse a prospective juror for cause, any party may make a challenge for cause. A challenge to a prospective juror must be made before the juror is sworn to try the case, unless the court permits it to be made after the prospective juror is sworn but before jeopardy has attached.”

“It is well settled that, in a jury trial, jeopardy attaches when the jury is 
empaneled and sworn
.”  
State v. Voigt
, 2007 ND 100, ¶ 11, 734 N.W.2d 787 (citations omitted) (emphasis added); 
see State v. Foley
, 2000 ND 91, ¶ 6, 610 N.W.2d 49 (“[T]he point at which jeopardy ‘attaches’ is that moment when the defendant is ‘put to trial before the trier of facts.’”); 
State v. Berger
, 235 N.W.2d 254, 257 (N.D. 1975) (“[A] defendant is placed in jeopardy in a criminal proceeding once the defendant is put to trial before the trier of the facts, whether the trier be a jury or a judge.”).

“[W]e have disparaged ‘rigid, mechanical’ rules in the interpretation of the Double Jeopardy Clause.  
Illinois v. Somerville
, 410 U.S. 458, 467 (1973).  However, we also observed in that case that ‘the conclusion that jeopardy has attached begins, rather than ends, the inquiry as to whether the Double Jeopardy Clause bars retrial.’  
Id.  Cf.
 
United States v. Sisson
, 399 U.S. [267,] 303 [(1970)].  Implicit in the latter statement is the premise that the ‘constitutional policies underpinning the Fifth Amendment’s guarantee’ are not implicated before that point in the proceedings at which ‘jeopardy attaches.’  
United States v. Jorn
, 400 U.S. [470,] 480 [(1971)].  As we have noted above, the Court has consistently adhered to the view that jeopardy does not attach until a defendant is ‘put to trial before the trier of the facts, whether the trier be a jury or a judge.’  
Id.
 at 479.  This is by no means a mere technicality, nor is it a ‘rigid, mechanical’ rule.  It is, of course, like most legal rules, an attempt to impart content to an abstraction.”

Serfass v. United States
, 420 U.S. 377, 390-91 (1975).  

[¶13] Here, the district court administered an oath to the potential jury pool before jury selection began.  The parties selected a jury of twelve.  The district court ordered the clerk of court to call out the names of selected jurors and seat them in the panel.  At this point the transcript noted “(A jury of twelve was empaneled).”  The district court dismissed the remaining potential jurors.  Immediately following the district court’s statement, the State’s Attorney approached the bench when he noticed one juror had lied on her juror form.  The dismissed pool returned to the courtroom, and the parties agreed to another juror.  The district court confirmed the substitution, then ordered the clerk of court to swear in the jurors.  After the district court’s verbal order the transcript noted “(An oath was administered to the jurors).”

[¶14] Here, jeopardy attached when the jury, including the substitute juror, was empaneled and sworn to hear the case.  
See Voigt
, 2007 ND 100, ¶ 11, 734 N.W.2d 787.  The jury had not taken an oath to hear the case before the substitution, therefore jeopardy had not attached.  We conclude the district court did not abuse its discretion in the jury selection process.

IV

[¶15] Isom argues the district court erred in denying his motion for a judgment of acquittal based on insufficiency of the evidence.  We disagree.

“When the sufficiency of the evidence to support a criminal conviction is challenged, this Court merely reviews the record to determine if there is competent evidence allowing the jury to draw an inference reasonably tending to prove guilt and fairly warranting a conviction.  The defendant bears the burden of showing the evidence reveals no reasonable inference of guilt when viewed in the light most favorable to the verdict.  When considering insufficiency of the evidence, we will not reweigh conflicting evidence or judge the credibility of witnesses.  We have held a jury may find a defendant guilty even though evidence exists which, if believed, could lead to a verdict of not guilty.”

State v. Demarais
, 2009 ND 143, ¶ 7, 770 N.W.2d 246 (internal citations and quotation marks omitted).  Section 12.1-17-02(1)(a), N.D.C.C., defines aggravated assault and requires the State to prove a defendant “Willfully cause[d] serious bodily injury to another human being.”  Section 12.1-17-13, N.D.C.C., adds the “domestic violence” designation to aggravated assault when the victim is a family or household member.  Section 14-07.1-01(4), N.D.C.C., defines a “family or household member” to include “persons who are in a dating relationship.”  Section 12.1-01-04(27), N.D.C.C., defines “serious bodily injury” to include “impediment of air flow or blood flow to the brain or lungs.”

[¶16] Here, the victim and Officer Ingram testified that Isom choked the victim, blocking her airway.  Isom argues the testimony and photos showed bruising to the “clavicle area” below the victim’s neck.  Viewed in the light most favorable to the verdict, competent evidence allowed the jury to draw an inference reasonably tending to prove Isom’s guilt and fairly warranting the conviction.  
See
 
Demarais
, 2009 ND 143, ¶ 7, 770 N.W.2d 246.  We conclude the district court did not err in denying Isom’s motion for a judgment of acquittal.

V

[¶17] Isom failed to show the district court abused its discretion in allowing the substitution of a juror and insufficient evidence meriting a judgment of acquittal.  We affirm the district court’s judgment as to these two issues.  Isom’s sentence of five years supervised probation was illegal under the statute in effect at the time of sentencing.  We reverse the judgment as to this issue and remand for sentencing consistent with the three-year maximum under N.D.C.C. § 12.1-32-06.1(2) and cross-

referenced statutes in effect as of July 5, 2017.

[¶18] Daniel J. Crothers

Lisa Fair McEvers

Jon J. Jensen

Jerod E. Tufte

Gerald W. VandeWalle, C.J.

FOOTNOTES
1:    
Both N.D.C.C. § 12.1-17-02 and relevant statutes referenced in 12.1-32-06.1(2) remained unchanged from when Isom committed the acts through his sentencing.  Both statutes were modified during the 2017 legislative session but the amendments do not apply to or affect the disposition of this case.  
See
 2017 N.D. Sess. Laws ch. 98, § 1 and 2017 N.D. Sess. Laws ch. 164, § 4, respectively.